UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RACHEL WARE and JOSHUA MELLO,  :
     Plaintiffs,               :
                                 :
     v.                         :        C.A. No. 24-348JJM
                                 :
CRANSTON PUBLIC SCHOOLS, et al.,  :
     Defendants.           :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

In this § 1983 case, *pro se* Plaintiffs Rachel Ware and Joshua Mello have challenged a series of no-trespass notices, which the parties refer to as "no-trespass orders," barring Plaintiffs from certain Cranston School Department premises. In their Amended Complaint (ECF Nos. 7, 7-1), Plaintiffs principally allege that these no-trespass order(s) constituted unlawful actions because they issued without what Plaintiffs claim is the constitutionally required notice and opportunity to be heard pursuant to the Due Process Clause of the Fourteenth Amendment. Plaintiffs also allege that the no-trespass order(s) transgress the Equal Protection Clause of the Fourteenth Amendment, the First Amendment, federal and state laws protecting whistleblowers and other provisions of state law (common law negligence and the Rhode Island Civil Rights Act). In addition, Plaintiffs claim that their subsequent arrests, respectively for trespassing on the specified Cranston School Department premises (Plaintiff Mello) and obstruction of Plaintiff Mello's trespassing arrest (Plaintiff Ware), violated their Fourth Amendment rights.

Now pending before the Court pursuant to Fed. R. Civ. P. 12(b)(6) is the motion of all Defendants to dismiss Plaintiffs' Amended Complaint. ECF No. 13. The motion has been referred to me for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Finding

that no hearing is necessary, I recommend that the Court grant the motion and dismiss the case because the Amended Complaint fails to state any plausible federal or state law claims, provided that, as to the state law negligence claim, I recommend that the Court's dismissal should be based on its exercise of discretion to decline to exercise supplemental jurisdiction.

## I.    STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Amended Complaint on its face must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The factual content must be sufficient to allow the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged; thus, the pleading must show "more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678.  The plausibility inquiry requires the Court to distinguish "the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  The task of dividing "the plausible sheep from the meritless goats" is accomplished through careful, context-sensitive scrutiny of the complaint's allegations.  Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 425 (2014).

When determining a motion pursuant to Fed. R. Civ. P. 12(b)(6), the Court normally may not consider anything outside of the operative complaint, except for material that is expressly incorporated into it.  Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).  "There is, however, a narrow exception for documents the authenticity of which

are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Id. (internal quotation marks omitted). In several instances *infra*, I have noted official public records that I recommend be considered. Further, Plaintiffs added new facts and documents in their opposition to the motion to dismiss. Mindful of their *pro se* status, as noted *infra*, I recommend that the Court consider this material as if set forth in the Amended Complaint. To the extent that the Court relies on this new material to reject my recommendation of dismissal, Plaintiffs should be directed to file a Second Amended Complaint that incorporates it. I note that Defendants also attached documents to their filings (ECF Nos. 14, 14-1); by contrast with Plaintiffs, to whose filings the Court must afford leniency, I have not considered and do not recommend consideration of Defendants' new material.

A court's pre-service screening of a complaint pursuant to 28 U.S.C. § 1915 does not preclude the court from granting a well-founded Fed. R. Civ. P. 12(b)(6) motion.[1] See Francisco v. United States Marshalls Serv., No. C.A. 11-231L, 2014 WL 652147, at *1 (D.R.I. Feb. 19, 2014). Because Plaintiffs are *pro se,* the Court has reviewed their Amended Complaint and related filings with liberality. Id. at *3.

## II.    BACKGROUND

Plaintiff Joshua Mello and his wife, Plaintiff Rachel Ware, have sued the City of Cranston, its Police and School Departments, various City officials and various officials of the Police and School Departments.[2] The Amended Complaint alleges that Plaintiffs have been

---

[1] Accordingly, I decline to endorse Plaintiffs' contention that the motion to dismiss should be denied because the Court screened their pleading.

[2] Plaintiffs have named twelve defendants. The entity Defendants are the City of Cranston, its Police Department and its School Department. Named as individuals are:

injured by no-trespass orders that barred them from entering Cranston's Western Hills Middle School ("Middle School"), where Plaintiff Mello's daughter was a student, as well as the School Department's Briggs Administrative Building.  See ECF No. 7 ¶¶ 2, 5, 6, 20.

Plaintiffs allege that the initial no-trespass order barring Plaintiff Mello from the Middle School was issued at the request of Defendant Principal Vesey in response to an October 21, 2021, incident ("October 21 incident") at the Middle School.  Id. ¶ 20.  It was subsequently extended to include the Briggs Administrative Building at the request of Defendant Superintendent Nota-Masse.  Id.  Plaintiffs attach to their Amended Complaint an email written by Defendant Rocchio dated October 25, 2021, establishing that the "No Trespass warning" for the Middle School and the Briggs Administrative Building was issued "at the request of the school district" "[a]s part of [Plaintiff Mello's] arrest" based on his conduct during the October 21 incident.  ECF No. 7-1.  As established by the state official public record,[3] the October 21 incident resulted in Plaintiff Mello's criminal conviction (in November 2022) for disorderly conduct and possession of a prohibited weapon (knive(s)) other than a firearm.  Mello v. Arruda, C.A. Nos. 23-479JJM, 23-480JJM, 2025 WL 847823, at *2 (D.R.I. Mar. 18, 2025) (describing

---

Cranston Police Department officials – School Resource Officer John Rocchio; Chief Colonel Michael Winquist; and Captain Sean Parker, the Head of the Cranston Police Department's Office of Professional Standards/Internal Affairs;

Cranston School Department officials – Superintendent Jeannine Nota-Masse; Assistant Superintendent Norma Cole; Middle School Principal Timothy Vesey; and Middle School Assistant Principal Derek Gustafson; and

Other Cranston Officials – Cranston Mayor Kenneth Hopkins and Cranston City Solicitor Christopher Millea.

All individual Defendants are sued in both their individual and official capacities.

[3] I recommend that the Court consider these official public records as they are described in Mello v. Arruda, C.A. Nos. 23-479JJM, 23-480JJM, 2025 WL 847823, at *2 (D.R.I. Mar. 18, 2025), in connection with the pending motion.  See Alternative Energy, Inc., 267 F.3d at 33 (official public records may be considered at motion to dismiss phase).

Plaintiff Mello's criminal convictions for his conduct at Middle School during school hours).[4]  At a time not identified in the Amended Complaint, Assistant Superintendent Cole requested a no-trespass order as to Plaintiff Ware.  ECF No. 7 ¶ 33.  To their opposition brief, Plaintiffs attach a copy of this request.[5]  ECF No. 17-5.  It is dated February 17, 2022, which the state court public record establishes is the same day that Plaintiff Mello engaged in conduct resulting in his conviction for obstruction as a result of another incident at the Middle School to which he pled *nolo contendere*.[6]

According to the Amended Complaint, there was confusion regarding when and how Plaintiffs received notice of the no-trespass order(s).  See generally ECF No. 7 ¶ 21.  Thus, according to the Amended Complaint (per Defendant Rocchio's October 25, 2021, email sent four days after the October 21 incident) "[d]ue to a miscommunication, Mello was arraigned [on the charges stemming from the October 21 incident] prior to being notified of these No Trespass Warnings."  ECF No. 7-1.  In the email, Defendant Rocchio noted that Plaintiff Mello had posted

---

[4] This decision issued in two other cases pertaining to the October 21 incident filed by Plaintiffs and/or Plaintiff Mello acting alone – Mello v. Arruda, 23-cv-479JJM (D.R.I.), and Mello v. Gustafson, 23-cv-480JJM (D.R.I.)  It contains a detailed exposition of Plaintiffs' contentions regarding what occurred at the Middle School during the October 21 incident.  As noted in the decision, Plaintiff Mello's post-conviction petition challenging the convictions arising from the October 21 incident remains pending.  See Mello, 2025 WL 847823, at *2.  In addition to these cases, Plaintiff Mello has filed other cases in state and federal court related to the October 21 incident.  These include the Rhode Island Superior Court civil case discussed *infra* in which Plaintiff Mello was afforded a full hearing in an (unsuccessful) attempt to vacate the no-trespass order(s), Mello v. Vesey, Case No. PC-2022-06458 (R.I. Super. Ct.).  They also include Mello v. Cranston School District, 24-cv-350JJM (D.R.I.); Mello v. Cranston School District, Case No. PC-2024-06065 (R.I. Super. Ct.); and Mello v. Dunton, Case No. PC-2024-04818 (R.I. Super. Ct.).  These cases are noted because Plaintiffs have asked the Court to award them Fed. R. Civ. P. 11 sanctions (ECF No. 16 at 9) based on Defendants' argument that Plaintiffs are (in Plaintiffs' words) "serial litigants." ECF No. 16 at 25.  I find Defendants' reference to these cases in their argument to be factually well founded and not to be presented for an improper purpose.  Therefore, the requested Fed. R. Civ. P. 11 sanctions are denied.

[5] Pursuant to Alternative Energy, Inc., 267 F.3d at 33 (documents central to plaintiffs' claim may be considered at motion to dismiss phase), I recommend that the Court consider the February 17, 2022, no-trespass notice request, whose authenticity has not been disputed by Defendants.

[6] See State v. Mello, Case No. 31-2022-01353 (R.I. 3rd Div. Dist. Ct. Feb. 22, 2022).  I recommend that the Court consider this official public record.  See Alternative Energy, Inc., 267 F.3d at 33 (official public records may be considered at motion to dismiss phase).

on social media about Rocchio and that it could trigger "an increased response" "if I were to attempt to contact [Plaintiff Mello] to make this notification." Id. To avoid such exacerbation, Defendant Rocchio directed to the recipients of the email his "respectful[] request that Mello be notified of these two formal No Trespass Warnings at his next court appearance." Id.; see also ECF No. 7 ¶ 41. Plaintiffs allege that this was never done in that these no-trespass order(s) were never "formally served to Joshua Mello." ECF No. 7 ¶ 21. Nevertheless, the Amended Complaint also alleges that Plaintiff Mello had actual notice in that he learned of the no-trespass order(s) from a news article. Id. In addition, the Amended Complaint alleges that both Plaintiffs had actual notice of the no-trespass order(s) no later than December 2, 2021, when Defendant Superintendent Nota-Masse sent them an email advising them that Cranston Police had determined that the "no-trespass order will remain in place." Id. ¶ 25. In their opposition brief, Plaintiffs confirm that they had actual notice of the no-trespass order(s) no later than December 1, 2021, because they complained about them in an email[7] sent that day to Defendants Nota-Masse, Vesey, Hopkins and Millea, as well as to other Cranston officials and various media outlets.[8] ECF No. 17 at 2.

In February 2022 (well after the actual notice of the no-trespass order(s) afforded by the December 2021 email exchange), Plaintiffs entered the Middle School to address an incident involving sexually explicit material that Plaintiff Mello believed was impacting his daughter and

---

[7] Because Plaintiffs attached it to their opposition, I recommend that the Court consider the December 1, 2021, email, whose authenticity Defendants have not disputed. See Alternative Energy, Inc., 267 F.3d at 33 (documents central to plaintiffs' claim may be considered at motion to dismiss phase).

[8] In this email, Plaintiffs did not advise the recipients of their contention that the no-trespass order(s) are constitutionally flawed or "violations of [their] rights," as the Amended Complaint alleges. See ECF No. 7 ¶¶ 34, 37-38. Rather, Plaintiffs argued that the order(s) made no sense and asked that the decision to issue them be reconsidered because the October 21 incident was the fault of the attorney representing the mother of Plaintiff Mello's child who had failed to send the Middle School "correct documents" regarding whether Plaintiff Mello was permitted to remove the child from school. ECF No. 17-2.

to deliver a copy of an *ex parte*[9] Temporary Restraining Order against the mother of Plaintiff Mello's child; they spoke to Defendant Assistant Principal Gustafson about these matters and allege that they were allowed to discuss their concerns and were not asked to leave the premises. Id. ¶ 22.  They returned the next day and entered the Middle School to discuss other troubling material found on Plaintiff Mello's daughter's laptop; Defendant Principal Vesey agreed to speak to them "outside" because Plaintiff Mello was "not allowed in the school."  Id. ¶ 23.  Plaintiffs refused this accommodation and went to the Briggs Administrative Building (also covered by a no-trespass order) to speak to the Superintendent.  Id. ¶¶ 20, 23.  They entered that Building but left when Plaintiff Mello was contacted by his attorney and informed that Cranston Police "intended to issue an arrest warrant" for a violation of the no-trespass order(s).  Id. ¶ 24.

The Amended Complaint alleges that Defendant Rocchio "proceeded to sign the warrant for Mr. Mello's arrest" for these trespasses.  Id. ¶ 42.  In their opposition to the motion to dismiss, Plaintiffs concede that this allegation is untrue because Defendant Rocchio did not sign the warrant(s).  ECF No. 16 at 13.  Instead, Plaintiffs now represent that the claim against Defendant Rocchio is based on the allegation that he "requested Mello's arrest . . . leading directly to the unlawful arrest" because the no-trespass order "lacked proper notice, meaning any enforcement action stemming from it – including the request for an arrest – was unconstitutional," as well as that "[t]he charges of willful trespass were dismissed by the

---

[9] That this restraining order was *ex parte* became a matter of public record because it was marked as an exhibit during Plaintiff Mello's state court case when he had a full hearing in a failed attempt to vacate the no-trespass order(s) based on his allegation that they are unconstitutional and unlawful.  See *Ex Parte* Temporary Order for Protection, Feb. 15, 2022, Mello v. Vesey, Case No. PC-2022-06458, Prelim. Inj. Hr'g Def. Ex. D (R.I. Super. Ct. Nov. 21, 2022).  The evidence presented to the Superior Court also includes the family court order promptly dismissing this *ex parte* restraining order because Plaintiff Mello did not meet his burden of proof once notice was given and the matter was heard.  Dismissal Order, Mar. 7, 2022, Mello, C.A. No. PC-2022-06458, Prelim. Inj. Hr'g Def. Ex. E (R.I. Super. Ct. Nov. 21, 2022).  The Court need not consider these documents in connection with the pending motion; I include this background to dispel the implication in the Amended Complaint that the mother of Plaintiff Mello's child had been found by a court to have engaged in abuse.  See ECF No. 7 ¶¶ 22, 24.

Attorney General's office because there was no formal notice even given to Mr. Mello."  Id.
Although Plaintiff Mello was convicted of obstruction based on the February 2022 events, see
n.6 supra, the criminal trespassing charges were dropped because the judge was not satisfied that
the no-trespass order(s) had been "formally" or "properly" served. Id. ¶¶ 21, 24, 29.  The official
public record confirms that the willful trespass charges were dismissed on June 30, 2022.  State
v. Mello, Case No. 31-2022-01353 (R.I. 3rd Div. Dist. Ct. June 30, 2022).  In their opposition to
the motion to dismiss, Plaintiffs add the factual allegation that, even though Plaintiffs had actual
knowledge of the no-trespass order(s) at the time of the alleged trespasses in February 2022, the
dismissal of the trespass charges was based on a state court judge's ruling that Plaintiff Mello's
"own words can't be used against him."  ECF No. 16 at 1.

    After the trespassing charges were dismissed by the state court, on July 15, 2022, a "new
no-trespass order" against Plaintiff Mello was signed by Defendant City Solicitor Millea[10] and
was "tacked" to his home.  ECF No. 7 ¶¶ 31, 38.  Four months later (in November 2022), as
Defendants ask the Court to consider, and the public record confirms, Plaintiff Mello filed a
lawsuit in the Rhode Island Superior Court against Defendant Vesey (the principal of the Middle
School).  Mello v. Vesey, Case No. PC-2022-6458 (R.I. Super. Ct. Nov. 10, 2022).  Plaintiff
Mello's Superior Court complaint alleges that the "unlawful and unconstitutional no trespass
order" deprived Plaintiff Mello of his due process and equal protection rights under the
Fourteenth Amendment; he asked the Superior Court to remove the no-trespass order(s) and to
enjoin Defendant Vesey from interfering with his parental rights.  See Complaint at 1-2, Mello,

---

[10] To their opposition brief, Plaintiffs attach a copy of the no-trespass notice dated July 15, 2022, signed by
Defendant Millea.  ECF No. 17-2.  As its authenticity has not been disputed, I recommend that it be considered.  See
Alternative Energy, Inc., 267 F.3d at 33 (documents central to plaintiffs' claim may be considered at motion to
dismiss phase).

Case No. PC-2022-6458 (R.I. Super. Ct. Nov. 10, 2022).  The Superior Court denied Plaintiff

Mello's motion for a temporary restraining order.  Order Denying Temporary Restraining Order,

Mello, Case No. PC-2022-6458 (R.I. Super. Ct. Nov. 10, 2022).  Then, "[a]fter conducting a full

hearing thereon," Plaintiff Mello's motion for preliminary injunction was denied in a bench

decision.  Order on Preliminary Injunction, Mello, Case No. PC-2022-6458 (R.I. Super Ct. Dec.

16, 2022).  On March 11, 2024, based on the reasons set forth in the bench decision, final

judgment entered against Plaintiff Mello and in favor of Defendant Vesey.[11]  Final Judgment,

Mello, Case No. PC-2022-6458 (R.I. Super. Ct. Mar. 11, 2024).

  Due to these no-trespass order(s), Plaintiffs allege that Plaintiff Mello was barred from

the Middle School and Briggs Administrative Building for three years while Plaintiff Ware was

barred for two and a half years.  Id. ¶ 32.

  Beyond identifying them as Defendants, ECF No. 7 ¶¶ 13, 14, 16-17, the Amended

Complaint contains a dearth of factual allegations alleging actionable misconduct against

Cranston Mayor Hopkins, City Solicitor Millea, Colonel Winquist, Captain Parker or the City of

Cranston municipal Defendants.  As to Mayor Hopkins, the Amended Complaint alleges only

that he was "notified of the violations of the plaintiffs' rights but failed to take corrective

action."[12]  Id. ¶ 37.  As to Solicitor Millea, apart from his signature on the July 15, 2022, no-

---

[11] If it adopts my recommendations that this case should be dismissed, the Court need not reach the question whether to consider this case, including whether and to what extent this "full hearing" resulting in final judgment in the Superior Court precludes Plaintiff Mello from relitigating the claims in issue in this case against Defendant Vesey or the Cranston entity Defendants for whom he acted in his official capacity.

[12] To their opposition brief, Plaintiffs attached the previously mentioned December 1, 2021, email to Defendants Hopkins and Millea (as well as others), nn. 7-8 supra, asking that the first of the no-trespass order(s) be lifted because Plaintiff Mello's escalation and arrest was caused by his child's mother's conduct.  ECF No. 17 at 2.  They also attached a July 25, 2022, letter to Defendant Hopkins only, vaguely complaining that the July 2022 no-trespass notice was a violation of Plaintiff Mello's rights.  ECF No. 17-1 at 2.  I recommend that both documents be considered.  See Alternative Energy, Inc., 267 F.3d at 33 (documents central to plaintiffs' claim may be considered at motion to dismiss phase).

trespass notice, the Amended Complaint alleges only that he was aware of Plaintiffs' dissatisfaction with the no-trespass order(s) but took no "corrective action."  Id. ¶ 38.  As to Colonel Winquist, the Amended Complaint alleges only that he failed to "take corrective action regarding the unlawful No Trespass Order" despite his supervisory role and complaints he received.  Id. ¶¶ 39-40.  As to Captain Parker, the Amended Complaint alleges only that he failed to take corrective action despite complaints and his position as Head of the Cranston Police Department's Office of Professional Standards/Internal Affairs.  Id. ¶ 40.  As to the municipal entity Defendants (the City of Cranston and its Police and School Departments), the Amended Complaint contains no specific allegations beyond those leveled at named individuals (as described above) or generically referencing "defendants"; in particular, the Amended Complaint does not allege that a constitutional deprivation was caused in whole or in part by a policy or custom attributable to the City.

After the original complaint (ECF No. 1) was filed, together with Plaintiffs' applications to proceed in forma pauperis (ECF Nos. 2, 3), it was screened by the Court pursuant to 28 U.S.C. § 1915.  At screening, all claims against the Cranston School Committee members were dismissed.  Text Order of October 2, 2024.  Plaintiffs responded with the Amended Complaint, which sought to reassert the claims against the dismissed defendants.  See ECF No. 7 ¶ 18.  The Court promptly issued an Order finding the Amended Complaint still deficient with respect to claims against the Cranston School Committee members and again dismissed them.  ECF No. 9 at 1-2.  The Court also dismissed all claims based on the Rhode Island Constitution.  Id.  Based on this Order, Count 5 and parts of Counts 3 and 8 of the Amended Complaint have been dismissed.  Following the issuance of the screening Order, the Amended Complaint was served on the remaining twelve Defendants.  Excluding the dismissed claims (Count 5 and parts of

10

Counts 3 and 8) and the dismissed defendants (the School Committee members), the Amended Complaint is the operative pleading.

## III.    ANALYSIS

### A.    The No-Trespass Order(s) Do Not Implicate Fourteenth Amendment Due Process Rights

Counts 1[13] and 8[14] of the Amended Complaint allege that Plaintiffs were deprived of their right to procedural due process under the Fourteenth Amendment by Defendants who knowingly issued, enforced and maintained the no-trespass order(s) against Plaintiffs without providing them proper notice, a hearing or an opportunity to contest them.  ECF No. 7 ¶¶ 45, 74.  Count 1 generically names "Defendants," while Count 8 is asserted against the School Department Defendants (Superintendent Nota-Masse, Assistant Superintendent Cole, Principal Vesey and Assistant Principal Gustafson) and against Officer Rocchio, the School Resource Officer.  ECF No. 7 ¶¶ 45-46, 74.  Defendants contend that these claims fail because the constitutional right to due process attaches only when there is a protected liberty or property interest in issue and that parents and the public do not have a liberty or property right to access public school property.  ECF No. 13-1 at 4-7.

---

[13] Count 1 also includes one paragraph that relies on the Equal Protection Clause.  ECF No. 7 ¶ 46.  The equal protection claim is addressed *infra*.

[14] By its heading, Count 8 purports to be based on "Willful Misconduct" – I include it as a potential due process claim because its content is focused on the issuance and enforcement of the no-trespass order(s) without due process or an opportunity to contest them.  ECF No. 7 at 21.  Elsewhere in their pleading, Plaintiffs state that they are relying on R.I. Gen. Laws § 9-1-2 as a provision of state law that governs "willful misconduct."  ECF No. 7 at 22.  However, R.I. Gen. Laws § 9-1-2 creates civil liability for injury caused by the commission of a crime and Plaintiffs' Amended Complaint does not allege the commission of a crime.  Plaintiffs also list R.I. Gen. Laws § 16-2-17 in the Amended Complaint.  "[E]ven if that statue created a private cause of action, which it does not, it guarantees rights only to student(s), staff member(s), teacher(s), and administrator(s), not to parents or stepparents of students, which is what Plaintiffs are."  ECF No. 9 at 1 (emphasis added) (internal quotation marks omitted).  Accordingly, to the extent that the Amended Complaint may be interpreted to assert a state law claim based on R.I. Gen. Laws § 9-1-2 or § 16-2-17, I recommend that it be dismissed for failing to state a claim.  And if the Court does not adopt this recommendation, I include these state law claims in my recommendation *infra* that the Court decline supplemental jurisdiction and dismiss state law claims without prejudice.

Pursuant to R.I. Gen. Laws § 11-44-26 (governing willful trespass) and R.I. Gen. Laws § 11-44-26.1 (governing willful trespass within school buildings), willful trespass is a misdemeanor.  Focused on public school buildings, among others, R.I. Gen. Laws § 11-44-26.1 specifically addresses the willful trespass by a person into a school building after having "been forbidden so to do by a local or state police officer or a guard, security officer, or an official of the school."  Id.  Importantly, Rhode Island law defines trespass as entering land "after having been forbidden to do so by the owner" and does not create any formal requirement for how to give the no-trespass notice or an opportunity for a hearing regarding whether a person may be forbidden to enter.  See Burkholder v. Kyhos, C.A. No. 14-317L, 2016 WL 475415, at *4 (D.R.I. Feb. 8, 2016).  Thus, "[n]o written notice or formal entry of an order is required."  Id.; see Bainum v. Coventry Police Dep't, 156 A.3d 418, 419-21 & 419 nn.2-3 (R.I. 2017) (malicious prosecution claim fails because willful trespass charge was supported by probable cause that trespass was willful based on actual knowledge despite lack of clear evidence regarding when and how claimant received no-trespass notice).  Notably, in Burkholder, the Court dismissed claims based on false arrest, false imprisonment, malicious prosecution and abuse of process despite the state court having dismissed the underlying criminal charge of willful trespass.  Burkholder, 2016 WL 475415, at *2-5.  Burkholder holds that being escorted from the property by police and being told not to return constituted a sufficient warning so that there was probable cause to support the willful trespass charge when the person tried to enter the property again in contravention of the warning.  Id. at *4.  That is, as long as there is actual notice such that the subsequent trespass is willful, Rhode Island law requires no formal notice and no pre-notice

hearing except in special circumstances (such as entering the airport or affecting a student's attendance at school)[15] not applicable in this case.

The Fourteenth Amendment's constitutional requirement of procedural due process (notice and an opportunity to be heard) applies only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.  Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569-70 (1972).  "A liberty interest that the Due Process Clause protects may arise from two sources – the Due Process Clause itself and the laws of the States." Perry v. Spencer, 94 F.4th 136, 147 (1st Cir. 2024) (internal quotation marks omitted).  Thus, the right to procedural due process is implicated by the deprivation of a liberty/property right directly protected by the Constitution, such as the right to personal liberty.  Id.  Otherwise, to trigger due process protection, a "person clearly must have . . . a legitimate claim of entitlement" grounded in a right created by a state statute,[16] rule or policy.  Roth, 408 U.S. at 576-78.

Plaintiffs' claim that the no-trespass order(s) implicated their due process right to notice and an opportunity to be heard fails at the motion to dismiss phase because they do not have a constitutionally protected due process interest in entering public school property.  See Pitta v.

---

[15] See Blais v. R.I. Airport Corp., 212 A.3d 604, 613-615 (R.I. 2019) (airport corporation required by state law to issue formal order before barring person from airport); Caldwell v. Cmty. Coll. of Rhode Island, C.A. No. 17-152-JJM-PAS, 2018 WL 2971116, at *1 (D.R.I. May 10, 2018) (suspended student whose presence poses continuing danger or threat of disruption of academic process has right to notice and rudimentary hearing), aff'd, No. 18-1594, 2019 WL 10943313 (1st Cir. Feb. 5, 2019).

[16] Plaintiffs contend that the trespass did not violate R.I. Gen. Laws § 11-44-26 (governing willful trespass) or R.I. Gen. Laws § 11-44-26.1 (governing willful trespass within school buildings) because the entry into school buildings was for a "legitimate purpose" – to serve the *ex parte* restraining order and discuss their concerns about Plaintiff Mello's child.  However, the provision in the state statutes to which Plaintiffs refer is applicable only to a person who, "having no legitimate purpose for his or her presence, remains within a building used for a public . . . school . . . after having been forbidden so to do," not to an individual who willfully trespasses.  See R.I. Gen. Laws § 11-44-26.1 (emphasis added); R.I. Gen. Laws § 11-44-26; see also State v. Demers, 525 A.2d 1308, 1309-10 (R.I. 1987) (trespass "statute can be violated in two ways: either by a willful trespass or by the entry of an individual having no legitimate purpose for coming onto the land of another and remaining there after having been forbidden to do so"; for willful trespass, "purpose in doing so is not relevant") (internal quotation marks omitted).  Thus, these statutes do not create a state-law right to trespass vested in a person claiming to have legitimate purpose for doing so.

Medeiros, 90 F.4th 11, 21 (1st Cir. 2024) (members of public do not have a constitutional right of access to school property), cert. denied, 144 S. Ct. 2631 (June 10, 2024); see, e.g., Howard v. Andover Public Schools, Civil No. 1:23-12177-LTS, 2024 WL 1236244, at *3 (D. Mass. Mar. 5, 2024) (parent does not have constitutional right of access to school property without restriction), appeal docketed, No. 24-1268 (1st Cir. Mar. 22, 2024); Wheatley v. Boardman Local Sch., Dist. Bd. of Educ., Case No. 4:21-cv-1831, 2022 WL 2291703, at *7 (N.D. Ohio June 24, 2022) ("Plaintiff does not have a protected right to attend events on school property . . . courts routinely dismiss due process claims when schools . . . prohibit parents from entering school property after the parent behaves inappropriately at a school event."), amended on other grounds, 2023 WL 1930547 (N.D. Ohio Jan. 23, 2023); Worthley v. Sch. Comm. of Gloucester, Case No. 22-cv-12060-DJC, 2023 WL 2918981, at *8-9 (D. Mass. Apr. 12, 2023) (no-trespass order does not deprive parent of any property or liberty interest as parent does not have a constitutionally protected liberty or property interest accessing public school during school hours); see also Ritchie v. Coldwater Cmty. Schs., No. 1:11-CV-530, 2012 WL 2862037, at *16-17 (W.D. Mich. July 11, 2012) ("[i]n the context of due process claims . . . every court that has considered the issue has concluded that citizens, including parents, do not have a liberty or property interest in accessing school property") (listing cases).  The law is clear – parents, as members of the public, do not have a constitutional right to access school buildings and school officials have broad discretion in restricting such visitors.  See Hannemann v. S. Door Cnty. Sch. Dist., 673 F.3d 746, 755 (7th Cir. 2012).  Nor has Rhode Island created any such right by statute, rule or policy. Roth, 408 U.S. at 576-78.

Because Plaintiffs do not have a constitutionally protected due process interest in accessing Cranston's Middle School and its Briggs Administrative Building in the circumstances

alleged in the Amended Complaint, their due process claim based on the lack of notice and an opportunity to be heard regarding the issuance of the no-trespass order(s) is not plausible and fails as a matter of law.  Thus, there is no need for the Court to address the other potential flaw in Plaintiffs' due process claim – their admission that they had actual notice of the no trespass order(s), which is sufficient under <u>Burkholder</u>, as well as that, post-issuance of the no-trespass order(s), Plaintiff Mello had a full hearing in the Superior Court on his unsuccessful motion to enjoin the order(s) from being enforced.

Because no constitutionally protected liberty or property interest was impaired by the no-trespass order(s), I recommend that Plaintiffs' procedural due process claims in Counts 1 and 8 be dismissed.

      B.     <u>Plaintiffs Fail to State a Plausible Claim of Denial of Equal Protection</u>

In two paragraphs of Count 1, Plaintiffs include the conclusory assertion that "Defendants, acting under color of state law, deprived Plaintiffs of their Fourteenth Amendment right to equal protection by issuing no-trespass orders against them without a rational basis" and that the "discriminatory issuance and enforcement of the no-trespass orders were intended to and did infringe on Plaintiffs' equal protection rights."  ECF No. 7 ¶¶ 46-47.  To state a § 1983 equal protection claim, a plaintiff must allege facts plausibly demonstrating that, compared with others similarly situated, the claimant was selectively treated based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.  <u>Boudreau v. Cent. Falls Det. Facility Corp.</u>, Case No. 20-324-JJM-LDA, 2020 WL 6064548, at *3 (D.R.I. Oct. 14, 2020).  Plaintiffs do not allege a similarly situated individual treated differently.  <u>Id.</u>  Nor do Plaintiffs plausibly allege that they are a "class-of-one."  <u>Back Beach Neighbors Committee v. Town of Rockport</u>, 63 F.4th 126, 130-

31 (1st Cir. 2023) (class-of-one plaintiff must present evidence of similarly situated comparators and extremely high degree of similarity between themselves and comparators).  This deficiency – Plaintiffs' failure to plausibly plead that they are similarly situated to an identified group but were treated differently based on impermissible considerations such as race or religion – is fatal to Plaintiffs' equal protection claim.  See Doe v. Salina, No. 23-cv-3529 (JMW), 2024 WL 5077629, at *27-29 (E.D.N.Y. Dec. 11, 2024) (dismissing equal protection claim brought by parent sent no-trespass letter by child's school).  Accordingly, I recommend that it be dismissed.

      C.    <u>Plaintiffs Fail to State a Plausible Claim of Denial of First Amendment Rights</u>

In conclusory fashion, Count 2 of the Amended Complaint alleges that, by issuing the no-trespass order(s), Defendants prevented Plaintiffs from participating in Plaintiff Mello's daughter's education (causing her to suffer stress and anxiety) and from attending public meetings in violation of their First Amendment rights to free speech and assembly.  The Amended Complaint contains no factual allegations to support their conclusory assertions regarding how the no-trespass order(s) restricted Plaintiffs' speech and rights of association.  In particular, Plaintiffs have neither identified any specific meeting open to the public held at the Middle School or Briggs Administrative Building that they intended to but were not allowed to attend because of the no-trespass order(s), nor presented factual allegations to support the conclusory claim that the no-trespass order(s) materially affected Plaintiff Mello's ability to communicate with school officials about his child nor do they include factual allegations of actual impact on Plaintiffs' ability to speak.

"The First Amendment prohibits government from abridging the freedom of speech" and guarantees "the right of the people peaceably to assemble." <u>Americans for Prosperity Foundation v. Bonta</u>, 594 U.S. 595, 605 (2021) (internal quotation marks omitted).  However, a school is

"generally considered a non-public forum, as it is a place in which the government does no more than reserve eligibility for access to the forum to a particular class of speakers, whose members must then, as individuals, obtain permission to use it." Doe, 2024 WL 5077629, at *17 (internal quotation marks omitted); see Worthley v. Sch. Comm. of Gloucester, 652 F. Supp. 3d 204, 212 (D. Mass. 2023) ("school during school hours is typically a nonpublic forum"). Thus, a parent does not have a general and unlimited First Amendment right of access to school property. Johnson v. Perry, 859 F.3d 156, 175 (2nd Cir. 2017). Accordingly, courts routinely find no First Amendment "violation where individuals have been banned from school property." Kadri v. Groton Bd. of Educ., Civil Action No. 3:13-CV-1165 (JCH), 2014 WL 1612492, at *5 (D. Conn. Apr. 22, 2014). Instructive is the Fourth Circuit's decision in Lovern v. Edwards, 190 F.3d 648, 656 (4th Cir. 1999), in which the court affirmed the dismissal of a parent's First Amendment claim that he had been denied rights of free speech and association allegedly arising from the school's no-trespass order. Id. at 654-56. Lovern holds that the parent's First Amendment rights to speech and association were not implicated because school officials had accommodated the need for discussion of the children's schooling and the parent remained free to speak and publicize his complaints about school officials' "corruption," so long as he was not on school property. Id. at 656 & n.13 (holding parent's "claims against [the] Superintendent . . . in this case are plainly insubstantial and entirely frivolous" and "assertions that school administrators must provide him with boundless access to school property are obviously without merit") (internal quotation marks omitted).

As alleged in the Amended Complaint, the no-trespass order(s) impacted Plaintiffs' access only to two areas within the Cranston School Department – the Middle School and the Briggs Administrative Building – and school officials made clear that they were willing to speak

to Plaintiffs about Plaintiff Mello's child, including outside of the prohibited venues.  See ECF No. 7 ¶¶ 22, 23.  Nor does the pleading allege that Plaintiffs were denied access to any specific public meeting or assembly as a result of the no-trespass order(s), nor does it allege that Plaintiffs were not free to use any forum other than the Middle School and Briggs Administrative Building to speak about school corruption and misconduct or other concerns they might have.  Therefore, I find that Plaintiffs have failed to state a plausible claim that their First Amendment rights were implicated by the no-trespass order(s).  Accordingly, I recommend that Count 2 be dismissed.

D.    Plaintiffs Fail to State a Plausible Claim of Denial of Fourth Amendment Rights Based on False Arrest

Count 6 of the Amended Complaint alleges unlawful arrest by Defendant Rocchio of Plaintiff Mello in violation of his Fourth and Fourteenth Amendment rights because Defendant Rocchio signed two arrest warrants for willful trespass on February 16 and 17, 2022, despite having been aware in October 2021 that the no-trespass order(s) (as of then) had not yet been "formally served."  ECF No. 7 ¶¶ 64-65.  Count 7 of the Amended Complaint alleges unlawful arrest by Defendant Rocchio of Plaintiff Ware for obstructing[17] the arrest of Plaintiff Mello in violation of her Fourth and Fourteenth Amendment rights because the predicate for her arrest was Plaintiff Mello's wrongful (because of the lack of "formal[]" notice) arrest for willful trespass.  Id. ¶¶ 68-71.

In their opposition, Plaintiffs concede that another officer (not Defendant Rocchio) signed the affidavit supporting application for the two warrants charging Plaintiff Mello (one for the February 16, 2022, trespass and one for the February 17, 2022, trespass and obstruction),

_____

[17] Count 7 appears to rest entirely on whether Plaintiff Mello's willful trespass arrest was unlawful based on the lack of "formal" notice; thus, the alleged arrest of Plaintiff Ware for obstruction is not separately challenged as wrongful or unsupported by probable cause.

which were issued by a state justice of the peace.  See ECF No. 16 at 13-14.  Thus, Plaintiffs' Fourth Amendment claim against Defendant Rocchio is now based on his having "requested" that the willful trespass criminal prosecutions against Plaintiff Mello be initiated.[18]  ECF No. 16 at 13.  According to this version of the claim, Defendant Rocchio made this request despite his awareness of the lack of a "formal warning"; however, Plaintiffs' opposition also reflects that Defendant Rocchio was aware that, at the time of the trespasses, Plaintiff Mello had <u>actual notice</u> of the no-trespass order(s) in that Plaintiff Mello had tried to "get [them] dropped by the school district and the city solicitor."  ECF No. 17-3 at 2.

To prove an actionable claim of a Fourth Amendment violation based on unlawful arrest, a plaintiff must plausibly allege that the criminal charge was not supported by probable cause. <u>Johnson v. Town of Charlestown ex rel. Wilcox</u>, C.A. No. 23-338 WES, 2024 WL 1329788, at *4 (D.R.I. Mar. 28, 2024).  Probable cause exists when, at the time of the arrest, the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  <u>Holder v. Town of Sandown</u>, 585 F.3d 500, 504 (1st Cir. 2009) (internal quotation marks omitted).  Such an inquiry is objective and requires the plaintiff to prove that the officer acted unreasonably in believing that there was a probability that the arrestee committed a crime.  <u>Id.</u>  Whether the Court focuses on the Amended Complaint as drafted or as clarified in Plaintiffs' opposition brief, Plaintiffs do not plausibly allege or assert that there was not probable cause to charge Plaintiff Mello with willful trespass on February 16 and again on February 17, 2022; nor do they allege that there was not probable

---

[18] As noted <i>supra</i>, I recommend that the Court accept the factual assertions in Plaintiffs' opposition as if incorporated in the Amended Complaint.

cause to charge Plaintiff Ware with obstruction.  Nor do Plaintiffs contend that they did not have actual notice of the no-trespass order(s) prior to Plaintiff Mello committing the willful trespass, which is all that the law requires; further, Plaintiffs include in their opposition the fact that Officer Rocchio was aware that they had actual notice when he requested that willful trespass be prosecuted.  Nor does the state court's subsequent dismissal of the willful trespass charges undermine that there was probable cause to bring them.  See Burkholder, 2016 WL 475415, at *4 (when probable cause exists for claimant's arrest based on entry onto property after actual notice of no-trespass order, prosecution's subsequent dismissal of charge provides no legal support for claim based on wrongful arrest).

Because Plaintiffs' Fourth Amendment claims are not plausible, I recommend that both Counts 6 and 7 be dismissed.

E.    Plaintiffs Fail to State a Claim Under State and Federal Whistleblower Protection Acts

Count 4 of the Amended Complaint is based on the conclusory allegation that Plaintiffs were engaged in unspecified protected whistleblowing activities "by exposing corruption and misconduct within the Cranston School Department" and that the no-trespass order(s) were issued in retaliation to silence them.  ECF No. 7 ¶ 56-57.  This Count recites that it is based on "federal and state whistleblowing protection laws."  ECF No. 7 ¶ 58.

As a statutory whistleblower claim, Count 4 fails because both the applicable federal and state statutes are limited to claims brought by employees or applicants for employment seeking protection from an employer's retaliation against defined whistleblowing.  See Federal Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8)-(9); Rhode Island Whistleblowers' Protection Act, R.I. Gen. Laws § 28-50-3; Harrison v. Granite Bay Care, Inc., 811 F.3d 36, 50 (1st Cir. 2016) (federal Whistleblower Protection Act is intended to protect government

employees); Crenshaw v. State, 227 A.3d 67, 74 (R.I. 2020) (state whistleblower statute protects activities that occur during employment).  Because Plaintiffs' statutory whistleblower claims do not arise in the employment context, I recommend that they be dismissed for failing to state a plausible claim.[19]

Mindful of the Court's obligation of *pro se* leniency, I have also considered whether Count 4 plausibly alleges that the no-trespass order(s) issued not because of Plaintiff Mello's conduct during the October 21 incident (as alleged in other parts of the Amended Complaint), but rather in retaliation for Plaintiffs' speech in "exposing corruption and misconduct within the Cranston School Department."  ECF No. 7 ¶¶ 56-57.  In addition to this conclusory allegation in Count 4, I note and recommend that the Court consider, that Plaintiffs' opposition includes more facts – a somewhat confusing reference to a leaked police report, defamation and the allegation that there is "a documented history of misconduct and retaliatory actions in the City of Cranston" exposed by a Cranston police officer.  ECF No. 16 at 16; see id. at 6, 9.

To viably state such a retaliation claim, a plaintiff must plausibly allege that (1) he engaged in protected activity; (2) he suffered some materially adverse action; and (3) the adverse action was causally linked to his protected activity.  Bronson v. Town of S. Kingstown ex rel. Saul, C.A. No. 1:22-CV-65-JJM-LDA, 2025 WL 408336, at *3 (D.R.I. Feb. 5, 2025), appeal docketed, No. 25-1231, 2025 WL 408336 (1st Cir. March 7, 2025).  Plaintiffs' conclusory allegations fail at the first and third prongs in that both the Amended Complaint and Plaintiffs' opposition lack cognizable facts permitting the reasonable inference that Plaintiffs engaged in protected activity or that the no-trespass order(s) were in retaliation for such protected activity.

---

[19] As to the state law whistleblower claim, if the Court does not adopt this recommendation, for the reasons discussed *infra* regarding the state law negligence claims, I alternatively recommend that the Court decline to exercise supplemental jurisdiction over these state law claims and that they be dismissed without prejudice.

Accordingly, I recommend that any claims based on alleged retaliation be dismissed.  See

Boudreau v. Petit, C.A. No. 17-301 WES, 2024 WL 665546, at *3 (D.R.I. Feb. 16, 2024)

(dismissing claim of retaliatory prosecution against state police where "lion's share of . . .

allegations regarding State Defendants are conclusory, and what allegations remain fall short of

asserting viable claims").

      F.     The Amended Complaint Fails Plausibly to Plead *Monell* Claims

Under § 1983, a municipal entity like the City of Cranston, including its Police and

School Departments, is subject to suit only when the culpable "employees were acting pursuant

to an official policy or custom of the municipality when they inflicted the alleged injury."

Boudreau, 2024 WL 665546, at *16 (internal quotation marks omitted).  To plausibly assert a

Monell claim, a plaintiff must show that the municipality's policy or custom caused the

constitutional violation.  Haley v. City of Boston, 657 F.3d 39, 51 (1st Cir. 2011).  That is, to

survive the Fed. R. Civ. P. 12(b)(6) phase, a Monell claim must be based on factual allegations

plausibly asserting that a municipal policy or custom inflicted the injury and is the moving force

behind the violation.  See Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 25-26 (1st

Cir. 2005) (citing Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978)).  Monell liability

cannot be based on respondeat superior or vicarious liability arising from the actions or inactions

of municipal employees.  Monell, 436 U.S. at 693-94.  The Supreme Court has set "a very high

bar for assessing municipal liability under Monell."  Young, 404 F.3d at 26.

The Amended Complaint contains only one conclusory allegation implicating Monell:

> [Monell] establishe[s] that local governments and their agents can be held liable
> for civil rights violations.  This applies to the Cranston . . . Police Department for
> depriving Plaintiffs of their First and Fourteenth Amendment rights.

ECF No. 7 at 25.  Nowhere do Plaintiffs allege an official municipal policy or custom that caused

their injury.  Accordingly, I recommend that Plaintiffs' <u>Monell</u> claims against the municipal

entities be dismissed.[20]  <u>See</u> <u>Winfield v. Town of Andover</u>, 305 F. Supp. 3d 286, 297 (D. Mass.

2018) (dismissing <u>Monell</u> claim, *inter alia*, because plaintiffs fail to identify municipal policy or

custom).

       G.      <u>Plaintiffs' Claims Against Defendant Millea Should Not be Dismissed Based on Absolute Immunity</u>

Plaintiffs have sued Cranston City Solicitor Millea because he signed the July 2022,

notice of no-trespass.  ECF No. 7 ¶¶ 31, 38.  They also make the conclusory allegation that

Defendant Millea was aware of their dissatisfaction with the earlier no-trespass order(s) but took

no "corrective action."  <u>Id.</u> ¶ 38.  In their opposition brief, Plaintiffs amplify the latter claim by

attaching the December 1, 2021, email to Defendant Nota-Masse (the school superintendent) and

many other officials and media, including Defendant Millea in his capacity as city solicitor.  ECF

No. 17 at 2.  This email asks Defendant Nota-Masse to have the no-trespass order(s) lifted

because the October 21 incident was the fault of the attorney representing the mother of Plaintiff

Mello's child; it does not allege that the order is unconstitutional or contrary to law nor does it

request a response or action by Defendant Millea.  <u>See</u> nn.8 & 12 *supra*.

Defendants contend that all claims against Defendant Millea fail not only because there

are no facts supporting a plausible claim that he engaged in conduct that caused Plaintiffs a

constitutional deprivation, but also because his actions are analogous to those of a prosecutor and

are protected by absolute immunity.  <u>See</u> <u>Kalina v. Fletcher</u>, 522 U.S. 118, 121-31 (1997).  As

---

[20] Plaintiffs' <u>Monell</u> claim also fails if the Court adopts my recommendation that Plaintiffs' § 1983 claims based on alleged First, Fourth and Fourteenth Amendment violations be dismissed.  With no constitutional injury, there can be no <u>Monell</u> liability.

explicated *infra*, I recommend that claims against Defendant Millea be dismissed because they are not plausible but do not recommend dismissal based on absolute immunity. Defendant Millea's actions in issue are more analogous to those of a municipal attorney acting on behalf of his client than those of a prosecutor. See Agresta v. Goode, 797 F. Supp. 399, 406 (E.D. Pa. 1992) (absolute immunity does not apply when solicitor's actions are more analogous to those exercised by "attorney conducting comparable litigation in private practice"). Further, the mere signing of a no-trespass notice is not the same as initiating a prosecution. See Brush v. Old Navy LLC, 687 F. Supp. 3d 452, 489 (D. Vt. 2023) (no-trespass notice has no legal significance beyond acting as predicate for criminal prosecution if violated). While a city solicitor may enjoy absolute immunity from suit when "performing certain functions analogous to those of a prosecutor," this case does not support such protection. Vanderburgh House, LLC v. City of Worcester, 530 F. Supp. 3d 145, 158 (D. Mass. 2021) (internal quotation marks omitted).

      H.     <u>The Amended Complaint Fails to State Plausible Claims Against Defendants Hopkins, Winquist, Parker and Millea</u>

      Plaintiffs' only allegations against Defendants Hopkins, Winquist, Parker and Millea are the conclusory assertions that each of them is a senior Cranston official (respectively, Mayor, Police Colonel, Head of the Cranston Police Department's Office of Professional Standards/Internal Affairs and City Solicitor) who was aware of Plaintiffs' complaints regarding some aspect of the events in issue[21] and that each failed to take unspecified "corrective action."

---

[21] As noted (nn.8 & 12 *supra*), I have considered the two documents, one sent to Mayor Hopkins and others, including Solicitor Millea, and one sent just to Mayor Hopkins, that Plaintiffs attached to their opposition brief. These do not permit the inference that inaction by the Mayor (or any other recipients of the December 1, 2021, email) amounts to actionable indifference to Plaintiffs' constitutional rights. As noted (n.10 *supra*), I have also considered Defendant Millea's signature on the July 2022 no-trespass notice that Plaintiffs attached to their opposition brief. Without more, it too is insufficient to state a plausible claim.

ECF No. 7 ¶¶ 13-14, 16-17, 37-40.  Such allegations fall well short of what is sufficient to state a plausible § 1983 claim against them.

"[A] supervisor may not be held liable under section 1983 on the . . . theory of respondeat superior, nor can a supervisor's section 1983 liability rest solely on his position of authority"; liability must be premised on the supervisor's own acts or omissions despite actual or constructive knowledge of a grave risk of harm or callous indifference to the constitutional rights of others.  Guadalupe-Baez v. Pesquera, 819 F.3d 509, 515 (1st Cir. 2016).  The pleading must allege an action or inaction affirmatively linked to a constitutional violation in the sense that it "could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference."  Id.  Mere negligence will not suffice.  Id. There must also be a solid causal link between the named individual's conduct and the constitutional deprivation.  Silva v. Clarke, C.A. No. 19-568JJM, 2022 WL 1091336, at *13 (D.R.I. Apr. 12, 2022), adopted by text order (D.R.I. May 2, 2022).  To survive a Fed. R. Civ. P. 12(b)(6) plausibility challenge, a complaint must contain factual (not conclusory) allegations sufficient to show the defendant's own involvement in specified unconstitutional conduct.  Iqbal, 556 U.S. at 678 ("claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").  A § 1983 claim "cannot rest solely on a defendant's position of authority."  Winfield, 305 F. Supp. 3d at 296 (internal quotation marks omitted).

The Amended Complaint fails to state a claim of § 1983 supervisory liability against these officials because the alleged constitutional violation of which Plaintiffs complained to them – the lack of "formal" notice of the no-trespass order(s) – did not put them on notice of a constitutional deprivation in light of settled law that a school is a nonpublic forum from which

parents can be excluded without due process and that Rhode Island law does not require more than actual notice that entry would be a trespass.  Beyond that, the Amended Complaint alleges nothing that was brought to their attention such that they had constructive knowledge of grave risk of harm or acted/failed to act based on callous indifference to Plaintiffs' constitutional rights.  Nor does the Amended Complaint contain factual allegations sufficient to show these Defendants' involvement in specified conduct that itself is unconstitutional.  See Iqbal, 556 U.S. at 678.  Accordingly, the § 1983 claims against these Defendants fail because they are not plausible.  In addition, the conclusory allegations against these Defendants also fail because they do not meet the requirement of Fed. R. Civ. P. 8(a), which requires a pleading to include enough information to allow fair notice of what each defendant is claimed to have done and why Plaintiffs are entitled to a remedy.  See Freeman v. J. P. Morgan Bank & Co., No. 1:20-cv-00087-MS-MPAS, 2022 WL 951856, at *3 (D.R.I. Mar. 30, 2022) (when "defendants are lumped together with little regard for individual actions and most of the allegations are devoid of specific facts committed by specifically identified defendants," claims are properly dismissed for failure to comply with Fed. R. Civ. P. 8(a)) (footnote omitted), appeal dismissed, No. 22-1306, 2022 WL 15146746 (1st Cir. July 22, 2022).

Based on the foregoing, I recommend that all claims against Defendants Hopkins, Winquist, Parker and Millea be dismissed for failing to state a plausible claim and because they do not meet the minimum threshold set by Fed. R. Civ. P. 8(a).

I.    Plaintiffs Fail to State a State Law Claim of Discrimination Under the Rhode Island Civil Rights Act

In its introductory paragraph, the Amended Complaint mentions in passing that Plaintiffs "invoke" R.I. Gen. Laws § 42-112-1, the Rhode Island Civil Rights Act ("RICRA"), because the no-trespass order(s) are "unlawful actions that violate [Plaintiffs'] civil liberties."  ECF No. 7 ¶

1.  The problem with this state law claim is that RICRA proscribes discrimination based on "race, color, religion, sex, disability, age, or country of ancestral origin," which the Amended Complaint does not allege.  R.I. Gen. Laws § 42-112-1(a); see Bronson, 2025 WL 408336, at *8. Thus, "[m]erely asserting discrimination without articulating and supporting with evidence (even inferential), the *basis* for such discrimination – such as race, sex, and age – is not enough to make out a RICRA discrimination claim."  Bronson, 2025 WL 408336, at *8 (internal quotation marks omitted) (alteration in original).  Accordingly, Plaintiffs' RICRA discrimination claims fail as a matter of law and should be dismissed with prejudice.[22]

  J.    The Amended Complaint's State Law Claim of Actionable Negligence
        Should be Dismissed

  Count 3 of the Amended Complaint rests on the conclusory allegation that "Defendants . . . were negligent in their duties by failing to address the Plaintiffs' serious grievances[,]" defined as "the violations and injustices suffered by the Plaintiffs."  ECF No. 7 ¶ 53.  Defendants argue that these negligence claims should be dismissed because a state common-law claim of negligence may be maintained separately from a § 1983 claim only when the negligence claim is based on facts that are different from the facts on which the § 1983 claims are based. Defendants' argument fails because, at the motion-to-dismiss phase, such alternative pleading is permitted.  See Mucci v. Town of N. Providence ex rel. Vallee, 815 F. Supp. 2d 541, 548 n.6 (D.R.I. 2011).

  However, Plaintiffs' negligence claim would nevertheless be subject to Twombly/Iqbal dismissal because the single conclusory allegation falls woefully short of stating a plausible

---

[22] If the Court does not adopt this recommendation, for the reasons discussed *infra* regarding the state law negligence claims, I alternatively recommend that the Court decline to exercise supplemental jurisdiction over this state law claim and that it be dismissed without prejudice.

negligence claim as to each named Defendant.  Instead, assuming (as I recommend) all of the §

1983 and federal statutory claims are dismissed, thereby eliminating all claims over which the

Court now has original jurisdiction pursuant to 28 U.S.C. § 1331, I recommend that the Court

exercise its discretion pursuant to 28 U.S.C.§ 1367(c)(3), guided by consideration of the

pertinent factors under the pendent jurisdiction doctrine, including judicial economy,

convenience, fairness and comity.  Medici v. Lifespan Corp., 384 F. Supp. 3d 218, 224 (D.R.I.

2019).  In light of the early phase of this case and because of the undeveloped state of the

negligence claims, which are subject to dismissal in federal court pursuant to Twombly/Iqbal, but

not necessarily in state court because Rhode Island has not adopted that heightened pleading

standard, my recommendation is that the Court should decline to exercise supplemental

jurisdiction and dismiss the negligence claims[23] without prejudice to being refiled in state court.

See Stay Away from the Cans, LLC v. Town of Johnston, 699 F. Supp. 3d 193, 200 (D.R.I. 2023)

("balance of factors weighs strongly in favor of declining jurisdiction where federal claims are

dismissed early in the litigation").

## IV.    CONCLUSION

Based on the foregoing, I recommend that Defendants' motion to dismiss be GRANTED

and that all of the claims against all Defendants should be dismissed with prejudice except for

Count 3 (and any other surviving state law claim), which should be dismissed without prejudice

based on the Court's declining to exercise supplemental jurisdiction.  Because Plaintiffs have

already amended their pleading once and have the benefit of my lenience in considering their

---

[23] As to the other state law claims (statutory whistleblowing, the Rhode Island Civil Rights Act and R.I. Gen. Laws §§ 9-1-2 & 16-2-17), because the applicable statute clearly fails to encompass the claim stated by Plaintiffs, I have recommended outright dismissal.  To the extent that any of these state law claims survive despite my recommendations, I similarly urge the Court to decline supplemental jurisdiction and dismiss them without prejudice.  See nn.19, 22 supra.

opposition as if incorporated into the pleading, I do not recommend another opportunity to amend.  Further, finding nothing in Defendants' filings that offends the strictures of Fed. R. Civ. P. 11, Plaintiffs' motion for sanctions (stated in their opposition) is denied.

Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
May 30, 2025